**HANDEE MARTS, INC., Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (FRONZAGLIO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 7, 1996.

Decided March 25, 1996.

Dennis N. Persin, for Petitioner.

Neil J. Marcus, for Respondent.

Before COLINS, President Judge, and DOYLE, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and FLAHERTY, JJ.

DOYLE, Judge.

Handee Marts, Inc. (Employer) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision granting compensation benefits to Frederick Fronzaglio (Claimant) for a heart attack. Employer appeals on the basis that the Board improperly granted Claimant's petition for a rehearing after the

---

referee originally found that Claimant was not entitled to benefits.

The facts are as follows. Claimant was employed as a clerk in Employer's West Elizabeth convenience store. His job required that he wait on customers, unload and stack cases of cans, sweep and mop the floor, and empty the trash. When Claimant suffered an acute myocardial infarction on July 24, 1987, he filed a claim petition against Employer alleging that he became totally disabled on that date, and that his disability was precipitated by stress at work.

Based on the Employer's time sheet records, which were initialed by Claimant, Referee Ada Guyton[1] found that, contrary to Claimant's allegations, he did not work on July 24, 1987 and his last day of work prior to his heart attack was July 22, 1987. She also found that Claimant's witnesses who testified that Claimant had been working on July 24, 1987, were biased and therefore not credible. The referee concluded, in an opinion and order dated November 20, 1990, that the heart attack suffered by Claimant was not related to his employment because he did not work on July 24, 1987. In reaching this decision, she specifically rejected the opinions of Claimant's medical experts because they relied on Claimant's statements that he had worked on the day of the injury. **No appeal was taken from this order.**

On July 24, 1991, eight months after the referee's original order, Claimant filed a petition for rehearing with the Board based on his allegations that he had uncovered additional evidence to present to the Board. Affidavits from attorney Neil J. Marcus, who represented Claimant in his compensation claim, and Tim O'Leary, a neighbor of Claimant, were attached. The Board in an opinion and order dated January 29, 1992, decided that it would treat the petition for rehearing as both an appeal filed *nunc pro tunc* under Section 423 of the Act[2] as well as a petition

for a rehearing under Section 426 of the Act.[3] The Board remanded the case to the Bureau for the purpose of assigning a referee to make a factual record on both the sufficiency of the "cause shown" for granting or denying the *nunc pro tunc* appeal, as well as the merits of the claim petition after consideration of the additional evidence alleged in the affidavits of Attorney Marcus and O'Leary. The Board stated:

> Claimant's attorney has now submitted to this Board two affidavits which, if supported by substantial competent evidence on the record, and believed by a fact finder, would prove that Claimant was employed by the employer on July 24, 1987, and would therefore, in the interests of justice, require a reversal of Referee Guyton's Order and the rehearing of the claim.

(Opinion of Board, 1/29/92, at 4; Reproduced Record (R.R.) at 16a.)

O'Leary's affidavit indicated that he saw Claimant in his work smock and that he stated he was going to work on the night before the Claimant suffered his heart attack. The second affidavit, given by Attorney Marcus, alleged facts told to him by another client of Marcus, Ms. Debbie Burke, Employer's store manager and custodian of Claimant's time sheets, which suggested that the time sheets might not have been substantial, competent evidence of Claimant's work schedule. According to Marcus, Burke had "felt under tremendous pressure from [Employer] to testify in support of [Employer's] position because she had injured herself in the course of her employment and was concerned that if her testimony was not favorable to [Employer], there [might] be repercussions involving her own workmen's compensation case." (Petition for Rehearing at 2; R.R. at 8a.)

After the rehearing was held, the referee found that Claimant did establish good cause for granting a new hearing. The Claimant's

---

1. Referees are now called Workers' Compensation Judges under the 1993 amendments to the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 701. *See* Section 14 of the Act of July 2, 1993, P.L. 190 (Act 44). However, since all aspects of this case were decided by the referee prior to the effective date of the amendments, August 31, 1993, we will refer to the referee as such and not as a Workers' Compensation Judge.

2. 77 P.S. § 853.

3. 77 P.S. § 871.

eligibility for benefits rested on the credibility of the lay testimony since all physicians found that Claimant's heart attack was related to Claimant's employment *if* the Claimant worked on July 24, 1987. The referee concluded that any factors which significantly affected the credibility of the lay witnesses should therefore be heard. The referee also found that the neighbor, O'Leary, testified credibly that he saw Claimant leave for work on the evening of July 23, 1987, and that the store manager testified credibly, based on her memory alone, that she had relieved Claimant on the morning of July 24, 1987, after he had finished his shift.[4] Employer's records were found to be not credible. In conclusion, the referee found that Claimant sustained his burden of proving that he became disabled on July 24, 1987, as the result of a heart attack precipitated by Claimant's employment on that date. The Board subsequently sustained the referee's decision granting benefits. Employer's appeal to this Court followed.[5]

On appeal, Employer argues that the Board was without jurisdiction to grant a rehearing under Section 426 of the Act, 77 P.S. § 871, where no appeal was taken from the original decision of the referee to the Board. Employer additionally argues that the Board lacked the authority to grant Claimant an appeal *nunc pro tunc* under Section 423 of the Act, 77 P.S. § 853, where there was no evidence of fraud or misrepresentation on the part of Employer which would warrant such relief. After a careful examination of the law governing this case, and notwithstanding the apparent equities supporting Claimant's position, we must agree with Employer that the Board was not justified in remanding this case for a new hearing under either Section 426 or Section 423 of the Act.

### I.  Section 426 of the Act.

■ Section 426 of the Act provides in pertinent part:

The board, upon petition of any party and upon cause shown, may grant a rehearing of any petition *upon which the board has made an award or disallowance of compensation, or other order or ruling, or upon which the board has sustained or reversed any action of a referee;* but such rehearing shall not be granted more than eighteen months after the board has made such award, disallowance, or other order or ruling, or has sustained or reversed any action of the referee.

77 P.S. § 871 (emphasis added). On its very face this language allows the Board to grant a rehearing only when it has previously reviewed the case and issued an order, and our research has found only two exceptions to this rule. The first is found in the Supreme Court's opinion in *Joseph v. Workmen's Compensation Appeal Board (Delphi Co.)*, 522 Pa. 154, 560 A.2d 755 (1989). There, the referee had prematurely closed the record and the court indicated that the Board, without previously having issued an order, could use its Section 426 power in the "interest of justice" to direct a remand so that the record could be completed. Significantly, in *Joseph,* there *had been* an appeal filed with the Board, a fact which is absent in this appeal.

The second situation where an exception to the requirement that the Board first enter an order on the merits of a case before granting a rehearing is found in *McBride Transportation Company, Inc. v. Workmen's Compensation Appeal Board (Parker),* 50 Pa. Cmwlth. 593, 413 A.2d 470 (1980). That case involved a situation where no appeal had been taken to the Board but the employer, which had lost before the referee, thought it had taken an appeal by writing a letter to the referee. The Board denied the petition for remand and rehearing, determining that the letter was not an appeal. The employer appealed the dismissal to this Court and while the matter was pending here, the em-

---

4. The store manager had originally testified that based on Employer's time sheets, which she believed to be accurate, Claimant had *not* worked on July 24, 1987. However, she testified at the rehearing that "in her heart" she believed Claimant had in fact worked on that day and that she had relieved him.

5. Oral argument was initially held in this case before a three member panel of this Court. Based on the importance of the issues involved, the case was subsequently submitted on briefs to the Court *en banc.*

ployer filed a "Stipulation and Agreement" with the Board, **joined in by the employee,** which, *inter alia,* stipulated that the Board could remand the case for rehearing. The Board entered an order denying rehearing on the basis that it had no authority to grant a rehearing because its first order, denying a rehearing, was before this Court. The employer also appealed that order. We held that in that situation, where the parties had agreed that the Board could act on a reconsideration petition, the Board had abused its discretion in declining to do so on the basis of lack of jurisdiction. *McBride,* however, is clearly distinguishable from the present case because here we lack any agreement to consider the rehearing request and there was nothing filed with the Board or the referee which could even arguably be considered an appeal. It is also worth noting that the peculiar facts in *McBride* have never been used as matrix for a principle applied in any other case.

In the present case, Claimant never appealed the original decision by the referee and the Board never entered an order on the merits of the case before granting a rehearing. Furthermore, since the Board's action does not fall within either of the exceptions to the general requirement that the Board issue an order on the merits before granting a request for a rehearing under Section 426, we find that the Board was precluded as a matter of law from granting Claimant a rehearing in the present case.

## II. Section 423 of the Act.

There remains the question of whether the Board's additional basis for its action, *i.e.,* granting Claimant an appeal *nunc pro tunc* under Section 423 of the Act, 77 P.S. § 853, can support its decision to grant a rehearing. At first glance, this section appears to allow the Board to act as it did, because it allows that body to extend the time for taking an appeal (20 days) "upon cause shown." This phrase, however, has been interpreted to require that the party seeking to appeal must demonstrate grounds for *nunc pro tunc* relief, *i.e.,* fraud or its equivalent. *Workmen's Compensation Appeal Board v. Gaines,* 24 Pa.Cmwlth. 307, 355 A.2d 595 (1976). Under this standard, the facts in this case clearly do not warrant *nunc pro tunc* relief.

The affidavit of claimant's neighbor, O'Leary, states in relevant part:

> I remember one night in 1987, I was at their [claimant's] home playing Yahtzee and seeing Fred Fronzaglio in his smock saying that he was leaving to go to work. I cannot remember the date but I remember the next day taking a walk by the Fronzaglio home and seeing Sally and Donna on their back porch and they were very upset. I learned from them that Fred had just had a heart attack and was in Mon Valley Hospital. I remember how odd it seemed that I had seen him that night before and something like that could happen.

(O'Leary's Affidavit at 1; R.R. at 203a.) This affidavit does not demonstrate that Claimant ever arrived at work nor does it constitute evidence of fraud. Rather, it indicates, at most, the possibility of what might have been and that a more thorough investigation could have been performed at the time to uncover evidence which supports Claimant's assertion that he did in fact work on the day of his heart attack.

The affidavit of attorney Marcus is even less helpful. It states first that Debbie Burke had commented to him that "she *might* have relieved Frederick Fronzaglio that morning which he said he worked, she could not be sure if that was accurate. She also related to me that she did not believe the records she kept were wrong." (Marcus' Affidavit at 1; R.R. at 204a.) (Emphasis added.) Although Ms. Burke's fear of testifying against her employer might form some basis for a determination that meaningful evidence had been withheld from the referee, because the affidavit was available, the evidence does not meet the strict standards justifying the grant of *nunc pro tunc* relief and, therefore, it cannot be utilized as a basis to grant such relief.

Even more telling, however, is the fact that the affidavit goes on to state that Ms. Burke was leery of giving any testimony in Claimant's case because she was concerned that it would adversely affect her own work-

ers' compensation claim and that attorney Marcus "was extremely reluctant to bring out any of this out throughout [claimant's] hearing because of the fact that Debbie Burke was my client in an unrelated matter." (Marcus' Affidavit at 2; R.R. at 205a.) Thus, it is clear that, at the time of the hearing, attorney Marcus **knew** of this evidence but deliberately chose not to present it in order to protect the rights of his other client, Burke. We do not address the ethical concerns raised by this conduct as they are beyond our review, but the fact that attorney Marcus knew of the evidence prior to claimant's hearing is the main reason why Claimant is not entitled to *nunc pro tunc* relief; the evidence regarding Burke was simply, and deliberately, not presented to the referee. Therefore, we conclude that the Board erred in granting Claimant permission to appeal *nunc pro tunc*.

Having determined that the Board's action is unsupported by any statutory basis, we conclude that it erred in granting the rehearing. Accordingly, we reverse the Board's order directing that a rehearing be held. Furthermore, we also vacate the referee's second order, which resulted from that rehearing, and reinstate the referee's first order denying the claim petition.

### ORDER

NOW, March 25, 1996, the order of the Workmen's Compensation Appeal Board in the above-captioned matter, which granted Frederick Fronzaglio a rehearing, is hereby reversed. In addition, the order of the referee, dated January 16, 1993, which granted Fronzaglio workers' compensation benefits, is vacated; and the previous order of the referee, dated November 19, 1990, which denied Fronzaglio workers' compensation benefits, is reinstated.

FRIEDMAN, J., concurs in the result only.